IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROSE MARIE LANGLAND,

                Plaintiff,                  OPINION AND ORDER

v.

                                                19-cv-981-wmc

COULEECAP, JANE GAFFNEY,
COURTNEY MESSER, and
KAREN HEDBLOM,

                Defendants.

---

In this lawsuit, *pro se* plaintiff Rose Marie Langland alleges that her former employer, defendant Couleecap, discriminated against her on the basis of her disability in violation of the Americans with Disabilities Act ("ADA"). Plaintiff also names three of her former colleagues at Couleecap as defendants: Jane Gaffney, Courtney Messer, and Karen Hedblom. Defendants have all filed a motion to dismiss Langland's complaint (dkt. #5) for failure to state a claim. In addition, individual defendants Gaffney, Messer, and Hedblom argue that they may not be sued under the ADA. For the reasons that follow, the claims against Gaffney, Messer, and Hedblom must be dismissed, while plaintiff will be allowed to go forward with her complaint against the principal defendant, Couleecap.

FACTS[1]

Plaintiff Rose Marie Langland was employed on a part-time basis by defendant Couleecap, a non-profit organization located in Wisconsin, until her termination on February 15, 2019. When Langland was employed there, defendants Jane Gaffney,

---

[1] For purposes of deciding defendants' motion to dismiss, the court accepts the following facts as alleged in her original complaint and supplemented in her opposition submissions.

Courtney Messer, and Karen Hedblom all worked at Couleecap. Langland describes Gaffney as having supervisory authority over her, while Messer worked in Human Resources, and Hedblom worked the same position as Langland on a full-time basis.

On January 18, 2019, Langland was informed – allegedly by team leader Gaffney and Messer -- that she would need to agree to an employee improvement plan or be terminated. (Pl.'s Compl. (dkt. #1) 2-3.) To ensure she met employee expectations, Gaffney also allegedly told her colleague Hedblom to work as Langland's partner and report on her activities to management. (Pl.'s Compl. (dkt. #1).) On February 15, 2019, after one week of "not putting in 20 hours and under producing," Langland claims that she was terminated. (*Id.* ¶ 5.)

Although Langland has not submitted an amended complaint, she offers additional context to the minimal allegations set forth above as part of her opposition briefing, since these additional allegations are consistent with her original allegations (*see* dkt. ##8, 12). As such, they are properly considered where the plaintiff is acting *pro se*. *See Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a set of facts within the scope of the complaint that if proved (a matter for trial) would entitled him to judgment.") (citing *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir. 1985)).

Of particular relevance, Langland represents that she was hired as an "Outreach Worker" position, (Pl.'s Reply Br. (dkt. #12, 2)), and asked to work 20 hours per week (Pl.'s Opp'n Br. (dkt. #8, ¶ 1)). Langland also claims that Gaffney "was informed that

2

[she] was disabled" during her interview, and Gaffney "stated that this job could be done in front of [her] computer and by phone in your pajamas." (*Id.*)  Additionally, Langland represents that she checked a box on her application form indicating that she suffered from a disability, though no one at the organization inquired about the nature of her disability while she was employed.  (*Id.*)

Although apparently not specifically disclosed to anyone at Couleecap, Langland further claims that she suffers from a number of disabilities related to her older age, mentioning hearing loss, dual hip replacements, and a diagnosis of heart condition called neurocardiogenic syncope.  (Pl.'s Reply Br. (dkt. #12) 1).)  More specifically, Langland says that she has problems walking and climbing stairs as a result of her replaced hips and heart condition.  At least in part, Langland also states that she pursued the Outreach Worker position at Couleecap because the description of the role gave her the impression that she could fulfill her duties without worry of exacerbating her disabilities.  (*Id.* at 2 (citing the online ad she first saw, which touted that Outreach Workers could work from home); *Id.* at 1 (stating that Jane Gaffney informed her, in her job interview with Couleecap, that she could perform her duties over the phone, on the computer, and in her pajamas).)

Nonetheless, once hired, Langland represents that she was asked to go door-to-door in various areas of the state to assist victims of natural disasters, requiring far more physical movement than she had anticipated.  (Pl.'s Opp'n Br. (dkt. #8) ¶ 2.)  Given her age and disabilities, these unanticipated exertions were especially difficult for Langland during the harsh winter months.  (*Id.*)  While Langland admits that she did miss work because she

3

was caring for (and grieving over) her dying dog (*Id*. ¶ 1), Langland implies that the employee improvement plan at the heart of this case came about after this work absence. (Pl.'s Reply Br. (dkt. #12) 2).) On January 24th, 2019, Langland further admits that she quit work 30 minutes early due to the extreme cold, and claims that Hedblom informed their supervisor, Gaffney, of her early absence as she had been instructed to do. (Pl.'s Opp'n Br. (dkt. #8, ¶ 2); Pl.'s Compl. (dkt. #1, 2)). Finally, after learning of her plan to leave early, Langland admits Hedblom informed her that Gaffney wished for Langland to work her full hours that day. (Pl.'s Opp'n Br. (dkt. #8) ¶ 2.)

OPINION

Construing Langland to be asserting a claim under the ADA, defendants seek dismissal as to all defendants. As an initial matter, the court notes that although Langland mentions her age as one of the reasons why her employment with Couleecap was so difficult, her complaint and briefing do not clarify whether she also intends to pursue a separate discrimination claim based on her age. If Langland intends to pursue such a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, she must amend her complaint to clarify that intent as well as to include the allegations necessary to state an ADEA claim.

I. ADA Claims Against Individual Defendants

Plaintiff brought suit not only against her employer, Couleecap, but also against her fellow employees Gaffney, Messer, and Hedblom. However, the ADA does not authorize

claims against individual employees; instead, liability claims to proceed are reserved *solely* against employers. *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995) (holding that individuals who do not otherwise meet the statutory definition of "employer" cannot be held liable under the ADA). Accordingly, any ADA claims levied against Langland's co-employees are fruitless, and defendants' motion to dismiss claims against Gaffney, Messer, and Hedblom will be granted.[2]

## II. ADA Claims Against Couleecap

As noted, defendants also seek dismissal of plaintiffs' complaint against Couleecap for failure to state a claim under Fed. R. Civ. P. 12(b)(6). However, dismissal under Rule 12(b)(6) is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 563 (2007). "To survive a motion to dismiss under Rule 12(b)(6)," therefore, a plaintiff must allege sufficient facts to: (1) "state a claim for relief that is plausible on its face"; and (2) give the defendant fair notice of what the claim is and the grounds upon which it rests. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570); *see also Twombly*, 550 U.S. at 555. Under the plausibility standard, the court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616

---

[2] It appears Langland acknowledges she may not proceed against these defendants. Indeed, in her opposition brief, Langland herself expressed regret for naming these parties in her complaint, stating that she was unaware that identifying her former colleagues in her statement of claim would necessarily pull them into the suit as parties. (Pl.'s Reply Br. (dkt. #12, 2).)

(7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).

Plaintiffs need not plead meticulous elements or theories; they need only present facts -- not mere recitations of elements -- that would form a legitimate complaint if true. Moreover, in evaluating the sufficiency of the complaint, the court must "draw[] all reasonable inferences in favor of the plaintiffs." *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). Furthermore, *pro se* filings are read generously by the court. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (We "construe pro se filings liberally, and we will address any cogent arguments we are able to discern."). For Langland's *pro se* ADA claim to go forward against Couleecap at this juncture, therefore, the court need only to identify the type of discrimination she pleads; she "is not required to plead legal theories, let alone to plead facts that correspond to 'elements' of any particular claim." *Stumm v. Wilkie*, 796 F. App'x 292, 295 (7th Cir. 2019) (citing *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017)).

Plaintiff's allegations meet this low threshold. Specifically, to state a discrimination claim under the ADA, a plaintiff must allege that: (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) she suffered from an adverse employment action because of her disability. *Hoppe v. Lewis Univ.*, 692 F.3d 833, 839 (7th Cir. 2012) (citing *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005)). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

Defendants neither tie their arguments in favor of dismissal to the elements of an ADA claim, nor to the definition of disability under the ADA. Instead, they seek dismissal based on plaintiff's supposed failure to specify her disability, as well as her failure to allege that any of the defendants were aware of it. However, defendants fail to acknowledge the fact that plaintiff listed her various health conditions that allegedly adversely impact her mobility, including the combination of her hip replacements, hearing loss and neurocardiogenic syncope that may substantially limit one or more major life activities. Similarly, defendants ignore plaintiff's representation that: (1) she informed Gaffney during her interview that she was disabled, much less Gaffney's response that plaintiff could work from home; and (2) she also indicated having a disability on her application. (*See* Pl.'s Opp'n Br. (dkt. #8) ¶ 1)). Finally, plaintiff alleges, if only on information and belief, that her termination was because Couleecap failed to accommodate her disability.

Obviously, fact-finding may reveal more details about whether plaintiff's physical condition, in fact, substantially limited her mobility, as well as whether her absences that apparently led to her termination were actually linked to her employer's failure to reasonably accommodate her disability (as opposed, for example, to her taking absences to care for her ailing dog). Still, at this stage, the court must draw every reasonable inference in plaintiff's favor *and* afford plaintiff greater leniency in light of her *pro se* status. Accordingly, Langland's ADA claim against Couleecap will survive defendants' motion to dismiss.

ORDER

IT IS ORDERED that Defendants' motion to dismiss (dkt. #5) is GRANTED in part as to defendants Gaffney, Messer, and Hedblom, who are DISMISSED, and DENIED in part as to defendant Couleecap.

Entered this 16th day of October, 2020.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge